# CONFIDENTIAL SETTLEMENT AGREEMENT
# AND MUTUAL GENERAL RELEASE

This Confidential Settlement Agreement and Mutual General Release ("Agreement") is entered into by and between Nerlyne Auguste (hereinafter "Plaintiff") and Desh Income Tax & Immigration Services, LLC and Magdala Niclasse, and their officers, directors, insurers, and agents (hereinafter "Defendants"); who are collectively referred to as "the Parties".

**Whereas**, Plaintiff filed a lawsuit in the District Court for the Southern District of Florida to recover her outstanding and unpaid/underpaid wages, worthless checks, penalties, liquidated damages, attorneys' fees and costs from the Defendants pursuant to the Fair Labor Standards Act, 29 U.S.C. §201, *et. seq*, Fla. Stat. §832.05, and Florida law in *Nerlyne Auguste v. Desh Income Tax & Immigration Services, LLC and Magdala Niclasse*, presently pending in the Southern District of Florida with Case No.: 1:24-CV-22849-BECERRA/TORRES ("the Lawsuit").

**Whereas,** to avoid the uncertainties of litigation, the Parties desire to enter into a mutually binding agreement to resolve the Lawsuit and any and all claims they could have brought in the Lawsuit on the terms and conditions set forth in more detail in the ensuing paragraphs.

**NOW THEREFORE**, in consideration of the mutual promises and covenants contained herein, the Parties agree to resolve Plaintiff's claims for unpaid/underpaid wages, penalties, attorneys' fees and costs by the Defendants' payment of the gross amount of FORTY EIGHT DOLLARS ($48,000.00), which includes $15,000 payable to Plaintiff ($7,500 for alleged unpaid/underpaid wages and $7,500 as alleged liquidated damages) and $33,000 ($2,886.06 in costs and $30,113.94 in fees) payable to Plaintiff's counsel (hereinafter "Settlement Fund"). Defendants shall pay the Settlement Fund according to the following:

1. Within 14 days of the Plaintiff executing this Agreement, payment of the gross amount of $5,000, with a total of $2,500.00 to Nerlyne Auguste through one payment to her for wages in the gross amount of $1,250.00 (minus applicable taxes and withholdings for which a W-2 will issue to her), a payment for her for $1,250.00 (for which a 1099 will issue to her), and a payment to FairLaw Firm for $2,500.00 (for which a 1099 will issue to it);

2. Within 28 days of the Plaintiff executing this Agreement, payment of the gross amount of $5,000, with a total of $2,500.00 to Nerlyne Auguste through a payment to her for wages in the gross amount of $1,250.00 (minus applicable taxes and withholdings for which a W-2 will issue to her), a payment for her for $1,250.00 (for which a 1099 will issue to her), and a payment to FairLaw Firm for $2,500.00 (for which a 1099 will issue to it);

3. Within 58 days of the Plaintiff executing this Agreement, payment of the gross amount of $2,000, with a total of $625.00 to Nerlyne Auguste through a payment to her for wages in the gross amount of $312.50 (minus applicable taxes and withholdings for which a W-2 will issue to her), a payment for her for $312.50 (for which a 1099 will issue to her), and a payment to FairLaw Firm for $1,375.00 (for which a 1099 will issue to it);

4. Within 88 days of the Plaintiff executing this Agreement, payment of the gross amount of $2,000, with a total of $625.00 to Nerlyne Auguste through a payment to her for wages in the gross amount of $312.50 (minus applicable taxes and withholdings for which a W-2 will issue to her), a payment for her for $312.50 (for which a 1099 will issue to her), and a payment to FairLaw Firm for $1,375.00 (for which a 1099 will issue to it);

5. Within 118 days of the Plaintiff executing this Agreement, payment of the gross amount of $2,000, with a total of $625.00 to Nerlyne Auguste through a payment to her for wages in the gross amount of $312.50 (minus applicable taxes and withholdings for which a W-2 will issue to her), a payment for her for $312.50 (for which a 1099 will issue to her), and a payment to FairLaw Firm for $1,375.00 (for which a 1099 will issue to it);

6. Within 148 days of the Plaintiff executing this Agreement, payment of the gross amount of $2,000, with a total of $625.00 to Nerlyne Auguste through a payment to her for wages in the gross amount of $312.50 (minus applicable taxes and withholdings for which a W-2 will issue to her), a payment for her for $312.50 (for which a 1099 will issue to her), and a payment to FairLaw Firm for $1,375.00 (for which a 1099 will issue to it);

7. Within 178 days of the Plaintiff executing this Agreement, payment of the gross amount of $2,000, with a total of $625.00 to Nerlyne Auguste through a payment to her for wages in the gross amount of $312.50 (minus applicable taxes and withholdings for which a W-2 will issue to her), a payment for her for $312.50 (for which a 1099 will issue to her), and a payment to FairLaw Firm for $1,375.00 (for which a 1099 will issue to it);

8. Within 208 days of the Plaintiff executing this Agreement, payment of the gross amount of $2,000, with a total of $625.00 to Nerlyne Auguste through a payment to her for wages in the gross amount of $312.50 (minus applicable taxes and withholdings for which a W-2 will issue to her), a payment for her for $312.50 (for which a 1099 will issue to her), and a payment to FairLaw Firm for $1,375.00 (for which a 1099 will issue to it);

9. Within 238 days of the Plaintiff executing this Agreement, payment of the gross amount of $2,000, with a total of $625.00 to Nerlyne Auguste through a payment to her for wages in the gross amount of $312.50 (minus applicable taxes and withholdings for which a W-2 will issue to her), a payment for her for $312.50 (for which a 1099 will issue to her), and a payment to FairLaw Firm for $1,375.00 (for which a 1099 will issue to it);

10. Within 268 days of the Plaintiff executing this Agreement, payment of the gross amount of $2,000, with a total of $625.00 to Nerlyne Auguste through a payment to her for wages in the gross amount of $312.50 (minus applicable taxes and withholdings for which a W-2 will issue to her), a payment for her for $312.50 (for which a 1099 will issue to her), and a payment to FairLaw Firm for $1,375.00 (for which a 1099 will issue to it); and

11. Within 298 days of the Plaintiff executing this Agreement, payment of the gross amount of $2,000, with a total of $625.00 to Nerlyne Auguste through a payment to her for wages in the gross amount of $312.50 (minus applicable taxes and withholdings for which a W-2 will issue to her), a payment for her for $312.50 (for

which a 1099 will issue to her), and a payment to FairLaw Firm for $1,375.00 (for which a 1099 will issue to it);

12. <u>Within 328 days</u> of the Plaintiff executing this Agreement, payment of the gross amount of $2,000, with a total of $625.00 to Nerlyne Auguste through a payment to her for wages in the gross amount of $312.50 (minus applicable taxes and withholdings for which a W-2 will issue to her), a payment for her for $312.50 (for which a 1099 will issue to her), and a payment to FairLaw Firm for $1,375.00 (for which a 1099 will issue to it); and

13. <u>Within 358 days</u> of the Plaintiff executing this Agreement, payment of the gross amount of $3,000, with a total of $937.50 to Nerlyne Auguste through a payment to her for wages in the gross amount of $468.75 (minus applicable taxes and withholdings for which a W-2 will issue to her), a payment for her for $468.75 (for which a 1099 will issue to her), and a payment to FairLaw Firm for $2,062.50 (for which a 1099 will issue to it).

Plaintiff agrees to the division of the Settlement Fund, as set forth above.

Defendants shall deliver all payments in satisfaction of the Settlement Fund in the amounts and by the deadlines identified above. Payments may be made as follows:

a. <u>Checks</u> – each check must be made out for the net amount specified above and delivered to FairLaw Firm, located at 135 San Lorenzo Avenue, Suite 770, Coral Gables, FL 33146, by each due date specified above.

b. <u>Electronic Payments</u> - must be made for the net amount and by each due date specified above, and deposited/transferred into the account(s) designated by Nerlyne Auguste and FairLaw Firm, respectively, as further provided below:

   i. by EFT or direct deposit to the account(s) designated by Nerlyne August and/or FairLaw Firm;

   ii. by Wire Transfer to the account(s) designated by Nerlyne August and/or FairLaw Firm, provided that Defendants include an additional $25.00 with each payment made by Wire Transfer to satisfy (offset) the wire transfer fees charged by each recipient.

   iii. by Zelle to the account(s) designated by Nerlyne Auguste; and/or

   iv. by e-check to the account(s) designated by FairLaw Firm.

FairLaw Firm and Nerlyne August shall provide the information necessary to enable the Defendants to make the electronic payments identified above, and each may change her/its electronic payment information upon written notification to the Defendants.

Either Defendant can make payments toward the Settlement Fund; however, Defendants are jointly and severally liable for payment of the Settlement Fund and all checks/payments issued towards it. FairLaw Firm will hold the Settlement Funds in escrow and will not disburse them to the Plaintiff or Plaintiff's counsel until the Court enters an Order approving this Agreement and/or dismissing the Lawsuit. The parties shall cooperate to obtain the prompt approval of this Agreement and/or the dismissal of the Lawsuit.

If any check or electronic payment issued toward payment of the Settlement Fund is dishonored, returned due to insufficient funds, or cannot be deposited ("NSF Payment"), Defendants agree to pay liquidated damages in the amount of $5,000.00 for each such NSF Payment. In addition to the providing Defendants email notification of a NSF Payment, Defendants also shall be entitled to receive email notice of any other default in payment under the Agreement, which shall be sent to Defendants' counsel of record in the Lawsuit. If the Defendants fail to cure the continuing default in payment within 5 days of their counsel of record in the Lawsuit receiving email notice, the Plaintiff shall be entitled to entry of a Default Final Judgment against the Defendants, jointly and severally, in the amount of $75,000 minus all payments successfully made (in addition to any liquidated damages resulting from any NSF Payment). These remedies are in addition to all other remedies available to the Plaintiff. Defendants waive all defenses to the entry of a Default Final Judgment other than the Plaintiff's failure to provide the 5 days notice required under this Agreement and/or timely payment.

The Parties generally release, satisfy, and forever discharge one another from any and all claims, demands, or liabilities whatsoever, whether known or unknown, which Plaintiff or Defendants ever had or may now have against one another from the beginning of time to the date this Agreement is executed, except for the obligations Defendants undertake in this Agreement. This release includes, without limitation, any claims, demands, or liabilities relating to or arising out of Plaintiff's employment with Defendants and separation of employment with Defendants pursuant to any federal, state, or local employment laws, regulations, ordinances, or executive orders prohibiting, among other things, age, race, color, sex, national origin, religion, marital status, familial status, sexual orientation, and disability discrimination.

Plaintiff and Defendants agree that all matters related to this Agreement, including the negotiations preceding it, are STRICTLY CONFIDENTIAL. They further agree that they, along with their attorneys, spouses, and representatives, will not publicize, disclose, or share any information regarding the terms of this Agreement, the content of the negotiations and discussions regarding this Agreement, or the settlement of this matter, with any third party or entity. They expressly agree that they cannot disclose or disseminate this Agreement or any information about it to the print or broadcast media, any internet communication outlet, or to individuals whom they know or have reason to suspect are past or present employees, contractors, customers, or vendors of the Defendants. Nothing in this agreement shall prevent Plaintiff from providing her counsel with a review on social media or the internet, provided she maintains the confidentiality of the terms of this Agreement.

Upon inquiry, Defendants shall provide a neutral employment reference and verify Plaintiff's dates of work, position(s) held, and rate(s) of pay, but without reference to any demand letter, lawsuit, claim(s) asserted therein, or the resolution of such claims. Upon Defendants' receipt of any employment inquiry regarding Plaintiff, Defendants shall not make any disparaging statements about Plaintiff or provide additional commentary related to Plaintiff's work performance.

The Parties mutually represent, covenant, and agree that neither Party, nor any of their respective employees, agents, representatives, or persons acting on behalf of either Party, shall, at any time after the date of this Agreement, through any medium whatsoever, whether orally or in writing (including, but not limited to, electronic mail, television, radio, computer networks, internet, bulletin boards, blogs, social media platforms such as Facebook, LinkedIn, Instagram, X, or any other form of communication):

1. Disparage, defame, impugn, damage, or assail the reputation of the other Party;

2. Cause or tend to cause any recipient of such communication to question the business acumen, conditions, integrity, competence, good character, or professionalism of the other Party; or

3. Make any statement or take any action that could reasonably be expected to adversely affect the reputation or goodwill of the other Party;

Similarly, Defendants agree to undertake the above-numbered covenants with respect to Plaintiff's husband, McKinson Auguste. Within three (3) calendar days following the execution of this Agreement, each Party shall identify and permanently remove any and all existing statements, posts, publications, or other content—whether in written, oral, digital, or any other form—made prior to execution of this Agreement, which violate this non-disparagement provision. Each Party shall confirm in writing, upon request, that such content has been removed in compliance with this provision. This non-disparagement obligation applies whether by virtue of this Agreement, the details covered by this Agreement, or otherwise. Nothing in this provision shall be construed to prohibit either Party from providing truthful testimony or information in response to a subpoena issued by a court of competent jurisdiction or as otherwise required by law; or prevent either Party from making statements to their respective legal counsel, provided that their counsel is made aware of and agrees to abide by the terms of this non-disparagement clause. This non-disparagement obligation shall remain in effect indefinitely, commencing from the effective date of this Agreement. The Parties agree that any breach of this non-disparagement clause may result in irreparable harm to the non-breaching Party, and that such Party shall be entitled to seek injunctive relief, in addition to any other remedies available at law or in equity.

Notwithstanding the foregoing, Plaintiff and Defendants may disclose this Agreement under the following conditions: (i) Plaintiff may advise her attorney(s), accountant(s), tax preparers, and the Internal Revenue Service (IRS) that she received income as a result of a settlement agreement relating to her employment and the amount received; (ii) to federal regulatory authorities or law enforcement officers if instructed by them not to discuss her conversation with them to the Defendants; and (iv) if subpoenaed by a party to a lawsuit, ordered by the Court, or otherwise legally compelled, Plaintiff may testify or provide information regarding this Agreement or may produce the Agreement.

The Parties acknowledge that each had the opportunity to have this document reviewed by counsel, that each had his/her/their/its counsel review and, if necessary, revise the agreement, and that the normal rules of construction regarding ambiguities being resolved against the drafting party shall not be employed in the interpretation of this Agreement. All prior negotiations, representations, and discussions are merged into and superseded by this Agreement. This Agreement may not be changed except in writing and signed by all of the Parties.

The parties agree that the substantive law of the State of Florida governs this Agreement and that jurisdiction over this matter shall be in the United States District Court for the Southern District of Florida, which is presiding over the Lawsuit. If the Court invalidates any provision of this Agreement, all remaining provisions shall remain in full force and effect, provided that both parties may still effectively rely. The prevailing party in any claim arising out of or relating to this Agreement shall be entitled to recover his, her, or its attorneys' fees.

Signature: *Magdala Niclasse*
Magdala Niclasse (Jun 2, 2025 12:59 EDT)

Email: maggytaxpro123@gmail.com

Defendants represent and warrants that the person signing this Agreement has the authority to act on behalf of Defendants and to bind Defendants and all who may claim through Defendants to the terms and conditions of this Agreement represents and warrants that s/he has the capacity to act on her own behalf and on behalf of all who might claim through him to bind him to the terms and conditions of this Agreement. Plaintiff and Defendants each warrant and represent that there are no liens or claims of lien or assignments in law or equity or otherwise of or against any of the claims or causes of action released by this Agreement, and no claim released has been previously transferred or assigned.

This Agreement does not constitute an admission of a violation of any law, order, regulation, or enactment, nor any wrongdoing by the Defendants, which is expressly denied.

Neither party has relied on any representations or statements made by the other party hereto that are not specifically set forth in this Agreement. This Agreement is expressly contingent upon the payment and clearance of all settlement funds. This Agreement may be executed in counterparts, and the facsimile or copy of any signature or this Agreement shall have the same force and effect as an original.

Defendants understand that although Plaintiff's counsel prepared this Agreement, they were advised of and had the opportunity to review this Agreement with their counsel, they were not provided with any legal advice by Plaintiff's counsel prior to signing and acknowledged that they understood this Agreement before signing it.

Plaintiff represents that this Agreement has been explained and/or translated to her and that she fully understood its contents before signing.

**IN WITNESS WHEREOF**, the undersigned have executed this Agreement as of the dates set forth below, willingly and freely.

*Nerlyne Auguste*

By: _____
Nerlyne Auguste (May 20, 2025 11:48 EDT)
*Nerlyne Auguste*

Date: 05/20/2025
_____

*Desh Income Tax & Immigration Services, LLC*

By: Magdala Niclasse_____
As Its Authorized Agent
Print Name: Magdala Niclasse___

*Magdala Niclasse*

By: magdala niclasse_____
*Magdala Niclasse*

Date: 06/02/2025
_____